IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| ONESOUTH BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-CV-379 (MTT) |
| | ) |
| HERMAN CURT TITSHAW, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendants Crisp Melons, Inc., Summer Time Melons, LLC, Global Produce Sales, Inc., Stephen Ross Nichols, Lee Allen Wroten, III, and Mark A. Elliott (the "buyer-defendants") move to dismiss Plaintiff OneSouth Bank's claims against them. Doc. 31. For the following reasons, that motion (Doc. 31) is **DENIED**.

### I. BACKGROUND

OneSouth alleges that it loaned money to Defendant Herman Curt Titshaw to fund his 2019 watermelon crop. Doc. 25 ¶ 28. A promissory note, loan agreement, commercial loan agreement, and security agreement were executed. *Id*. The promissory note had a value of $1,300,000 and matured on November 29, 2019, and Titshaw was required to "make a single payment of all unpaid principal and accrued interest on or before said maturity date with an interest rate of 7.25%." *Id*. ¶ 29; Doc. 25-2. The security agreement executed between OneSouth and Titshaw listed as collateral, among other things, all crops and proceeds owned by Titshaw. Docs. 25 ¶ 32; 25-5. This included subsequently planted crops. Docs. 25 ¶ 34; 25-5. In short,

OneSouth loaned Titshaw the money to plant, grow, and harvest watermelons and retained a security interest in those watermelons.

Pursuant to the security agreement, Titshaw was required to supply OneSouth with a list of potential buyers to whom he might sell the watermelons.  Docs. 25 ¶ 35; 25-5.  This is because under the Food Security Act ("FSA"), a lender can protect its security interest in crops by ensuring that "the buyer [of the crops] has received from the secured party or the seller written notice of the security interest[.]"  7 U.S.C. § 1631(e)(1)(A).  Titshaw listed one potential buyer, Crisp Melons, Inc.  Doc. 25 ¶ 35.  OneSouth sent notice of its security interest to Crisp Melons, and it was received by Kathy Murdock, an officer of Crisp Melons.  *Id.* ¶¶ 42-43; Docs. 25-7; 25-10.

After harvest, Titshaw sold his watermelons, but not to Crisp Melons.  Before the 2019 watermelons season, the Georgia Secretary of State issued Crisp Melons a Certificate of Dissolution/Revocation on September 7, 2018 "for failure to file its annual registration and/or failure to maintain a registered office in the State of Georgia."  Docs. 25 ¶ 54; 25-17.  OneSouth alleges that Crisp Melons' business "merely shifted over to Summer Time, which was located at the same address, engaged in the same manner of business, was owned by the same people, and was formed March 8, 2017, just 18 months before the issuance of the Administrative Dissolution against Crisp."  Doc. 25 ¶ 58. Kathy Murdock, the person who received notice of OneSouth's security interest in the watermelons, was both an officer of Crisp Melons and a manager of Summer Time.  *Id*. ¶ 43; Docs. 25-8; 25-9; 25-10.  According to OneSouth, Titshaw, who was dealing with the *people* he customarily dealt with, had no reason to think he was dealing with a different entity, and thus he unknowingly sold his melons to Summer Time and Global,

another corporation with the same executives and shareholders as Crisp Melons, and those corporations subsequently sold the watermelons to third-party buyers.[1]  Docs. 25 ¶¶ 61-62; 25-18.

OneSouth further alleges that Global and Moore Haven, a company that lists Global as its manager and registered agent, previously "provided unsecured loans to Titshaw in 2018 or early 2019 in the amounts of approximately $228,000 and $130,000."  Docs. 25 ¶¶ 67-68; 25-19.  OneSouth alleges that Global's payments to Titshaw for the watermelons were reduced by the amounts of these unsecured loans plus costs and expenses incurred by Global and Moore Haven.  Doc. 25 ¶¶ 69-70.  In other words, OneSouth alleges that Global and Moore Haven had their *unsecured* loans repaid from the proceeds of the sale of Titshaw's watermelons, even though OneSouth had a security interest in the watermelons.

Titshaw made four partial payments to OneSouth totaling $364,328.26 and then defaulted by failing to make any subsequent payments.  *Id*. ¶¶ 47-49.

OneSouth contends that because Kathy Murdock was an officer for each of the corporate defendants, she received the notice for each of the corporate defendants despite the notice only being addressed to Crisp Melons.  Doc. 33 at 8-9.  The buyer-defendants argue that only Crisp Melons received notice of OneSouth's security interest because the notice was only addressed to Crisp Melons.  Docs. 31 at 12; 25-7 at 1.

---

[1] OneSouth alleges that Global wrote the checks to Titshaw for the watermelons, and Summer Time physically took possession of them.  This was how it appears Titshaw sold his watermelons in previous years, except Crisp Melons normally was the entity that took possession of the crops.  Doc. 25 ¶¶ 47, 53, 57, 61.

OneSouth also alleges that Crisp Melons, Summer Time, Global, Nichols, Wroten, and Elliott shared a common identity, and the corporate formalities should be disregarded.  Doc. 25 ¶¶ 77-78.  OneSouth supports this allegation by asserting that Nichols, Wroten, and Elliott "own all, or substantially all, the equity in and/or control all, or substantially all, of the activities of Crisp, Summer Time, and Global, and have moved assets freely between the entities for their own benefit."[2]  *Id*. ¶ 79.  OneSouth asserts that its alter ego theory is supported by "Titshaw's apparent belief that Crisp, Summer Time, and Global were for all intents and purposes the same entity; by Summer Time for all intents and purposes being a successor corporation for Crisp; by the entities sharing common ownership and management; by the entities sharing employees (such as Murdock); by the entities sharing assets (such as the physical location of Crisp/Summer Time); and by Global utilizing Crisp and/or Summer Time to take possession of the watermelons after the purchase."  *Id*. ¶ 82.

OneSouth alleges that because each of the buyer-defendants shared a common identity, each of them received written notice of OneSouth's security interest, even if the notice was only sent to Crisp Melons.  Therefore, according to OneSouth, any control or dominion asserted over the watermelons by any of the buyer-defendants in violation of OneSouth's security interest was a conversion.

The buyer-defendants argue that OneSouth's alter ego/common identity allegations are conclusory and insufficient to properly plead an alter ego theory.  Doc.

---

[2] To summarize and perhaps clarify, each of the individual defendants, other than Titshaw, served in some capacity for each of the corporate defendants.  Nichols was an officer and shareholder of Global, a manager and member of Summer Time, and an officer and shareholder of Crisp Melons.  Doc. 25 ¶¶ 11-13.  Wroten was an officer and shareholder of Global, a manager and member of Summer Time, and an officer and shareholder of Crisp Melons.  *Id*. ¶¶ 16-18.  Elliott was an officer and shareholder of Global, a manager and member of Summer Time, and an officer and shareholder of Crisp.  *Id*. ¶¶ 22-24.

31 at 13-17.  Therefore, according to the buyer-defendants, only Crisp Melons was given proper notice of OneSouth's security interest.  *Id*.  The buyer-defendants also argue that OneSouth has not alleged facts demonstrating that Crisp Melons—and not any of the other defendants—exercised control over the watermelons or proceeds therefrom.  *Id*.  Finally, Nichols, Wroten, and Elliott, all residents of Florida, argue that OneSouth has not sufficiently alleged that the Court possesses personal jurisdiction over them.  *Id* at 18-20.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not

prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Because OneSouth only alleges state law claims and the parties are not completely diverse, the Court ordered the parties to submit supplemental briefs addressing whether this Court has subject matter jurisdiction. Doc. 36. Both parties argued that there is federal jurisdiction pursuant to the substantial-federal-question doctrine. Docs. 38; 39. The Court agrees.

A federal court has jurisdiction "over a state law claim … if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Each of these elements is satisfied for OneSouth's conversion claim.

First, OneSouth's conversion claim necessarily raises an issue of federal law. For OneSouth to succeed on its conversion claim, it must establish that it had rights in the watermelons. *Mitcham v. Am. Int'l Grp., Inc.*, 2007 WL 9752778, at *2 (M.D. Ga. Jan. 17, 2007) (citing *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261, 356 S.E.2d

877, 880 (1987)).  Whether OneSouth had rights in the watermelons depends on whether it complied with the FSA—a federal law.  Accordingly, OneSouth's conversion claim necessarily raises a federal issue.

Second, the parties actually dispute the interpretation of the FSA.  The buyer-defendants argue that because OneSouth's written notice was sent only to Crisp Melons, the other buyer-defendants did not receive the written notice.  Doc. 31 at 9-13.  Therefore, the buyer-defendants argue, they took Titshaw's watermelons free of OneSouth's security interest as buyers in the ordinary course of business.  *Id*.  On the other hand, OneSouth argues that because Kathy Murdock was an officer for each of the corporate defendants, she received the notice for all the corporate defendants, despite the notice only being addressed to Crisp Melons.  Doc. 33 at 8-9.  Accordingly, the interpretation and application of the FSA is actually disputed.

Third, this issue is substantial.  Although neither the United States nor a federal agency is a party to this lawsuit, Congress expressed and acted on strong federal interests when it passed the FSA—among other things, protecting buyers of farm goods from potential double payment and promoting "free competition in the market for farm products."  7 U.S.C. § 1631(a)-(b).  Further, the federal government has a substantial interest in the interpretation and application of the FSA because the United States Department of Agriculture guarantees FSA loans.  Therefore, the interpretation of the FSA notice requirement is not only important to the parties in the case but also to the "federal system as a whole."  *Gunn*, 568 U.S. at 264.  Finally, the disposition of this case could impact numerous cases in which the adequacy of the direct written notice requirement is at issue.  *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677,

700 (2006) (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)).  Accordingly, the federal issue in this case is substantial.

Finally, OneSouth's conversion claim is capable of resolution in federal court without upsetting the federal-state balance approved by Congress.  Although the FSA does not grant a private right of action, it nonetheless is a federal regulatory scheme enacted to protect buyers of farm goods and to remove barriers disrupting interstate commerce.  Moreover, because resolving the federal issue in this case will require interpreting and applying a federal statute without the guidance of binding authority, federal jurisdiction over this single case will not "lay out a welcome mat" for all state law conversion claims between non-diverse parties.  Instead, this is a rare state law claim that raises "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315.  Accordingly, the Court has subject matter jurisdiction over this case pursuant to the substantial-federal-question doctrine.

### B. OneSouth has Plausibly Alleged that the Buyer-Defendants Shared a Common Identity

Under Georgia law, "a corporation is a separate legal entity from its officers and shareholders." *Tomlinson v. ResQline, Inc.*, 2005 WL 8156147 (N.D. Ga. Oct. 25, 2005) (citing *United States v. Fidelity Cap. Corp.*, 920 F.2d 827, 836 (11th Cir. 1991)). Because of this principle, "great caution should be exercised by the court in disregarding the corporate entity." *Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 258 Ga. App. 1, 5, 572 S.E.2d 647, 651 (2002).  To establish that the corporate veil should be pierced at the motion to dismiss stage, a plaintiff must allege abuse of the corporate form and that the corporation became "a mere instrumentality for the transaction of [the shareholders'] own affairs, that the corporation and its owners have such unity of

interest and ownership that they lack separate personalities, and that to observe the corporate form would work an injustice or promote fraud." *Fidelity*, 920 F.2d at 837. This same test also applies when a party alleges that a corporation is abusing the corporate form of a subsidiary or related corporation. *Najran Co. for Gen. Contracting and Trading v. Fleetwood Enterprises, Inc.*, 659 F. Supp. 1081, 1095 (S.D. Ga. 1986). While a corporation's identity will usually be kept independent from its shareholders and other corporations, the corporate identity may be disregarded if insulating the corporation "promotes fraud, defeats justice, conceals crime, or seeks to evade contractual or tort responsibility." *Boafo v. Hosp. Corp. of Am.*, 177 Ga. App. 75, 76, 338 S.E.2d 477, 479 (1985).

OneSouth alleges that Crisp Melons, Summer Time, and Global are all owned and operated by the same people—Nichols, Wroten, and Elliott. Doc. 25 ¶¶ 11-13, 16-18, 22-24. OneSouth also alleges that the corporate defendants share employees, share workspace, and are involved in the same type of business. *Id.* ¶¶ 44, 51-52, 58. OneSouth also alleges that Summer Time was created to avoid lender security interests in farm goods. *Id.* ¶¶ 58-59. Moreover, OneSouth alleges that when Titshaw was paid for his watermelons, Global reduced the amount that it paid him by the amount it was owed for outstanding unsecured loans. *Id.* ¶¶ 68-70.

Based on these allegations, Summer Time was an instrumentality to benefit each of the other buyer-defendants and to deceive lenders. These allegations amount to abuse of the corporate form, and to "observe the corporate form" in this case would "work an injustice or promote fraud." *Fidelity*, 920 F.2d at 837. OneSouth has properly alleged that the buyer-defendants shared a common identity. Accordingly, OneSouth

has alleged that the buyer-defendants received direct written notice of its security interest in Titshaw's 2019 watermelon crop, despite the notice only being addressed to Crisp Melons.[3]

### C. OneSouth has Plausibly Alleged a Conversion Claim

"Under Georgia law, 'any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion.'" *Mitcham*, 2007 WL 9752778, at *2 (M.D. Ga. Jan. 17, 2017) (quoting *Welchel*, 257 Ga. at 261).  Here, because OneSouth has properly alleged that each of the buyer-defendants shared a common identity, OneSouth has properly alleged that it provided direct written notice to the buyer-defendants of its security interest in Titshaw's 2019 watermelon crop pursuant to the FSA.  Therefore, the buyer-defendants took possession of Titshaw's watermelons subject to the security interest.  7 U.S.C. § 1631(e)(1).  Further, OneSouth alleges that the buyer-defendants improperly exercised dominion and control over the watermelons by selling them to third parties and reducing Titshaw's payments by the amount that he owed on previous unsecured loans.  Doc. 25 ¶¶ 61-62, 65.  These actions were inconsistent with OneSouth's right to the watermelons and proceeds therefrom.  Accordingly, OneSouth has alleged sufficient facts to state a conversion claim against each of the buyer-defendants, and their motion to dismiss for failure to state a claim is **DENIED**.

---

[3] Because OneSouth has properly alleged that the buyer-defendants shared a common identity under a piercing of the corporate veil theory, the Court need not decide at this stage whether the buyer-defendants each received direct written notice of OneSouth's security interest when Kathy Murdock, an officer for each of the corporate defendants, received the notice that was addressed solely to Crisp Melons.

### D. Personal Jurisdiction

#### 1. Standard

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation marks and citation omitted). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id*. (internal quotation marks and citation omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id*. (citation omitted).

In cases where subject matter jurisdiction is based on a federal statute that does not authorize nationwide jurisdiction, personal jurisdiction over nonresidents is determined by a two-part analysis. Fed. R. Civ. P. 4(e); *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998). First, the Court must ask whether jurisdiction comports with the state's long-arm statute; and second, "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (internal quotation marks omitted)).

### 2. The Long-Arm Statute

The Georgia Long-Arm statute states that Georgia courts may have jurisdiction over a nonresident if, among other things, he transacts business in Georgia or commits a tort in Georgia.  O.C.G.A. § 9-10-91(1)-(2).  The Eleventh Circuit has interpreted the Georgia Long-Arm statute literally and explained, "'Transact' means 'to prosecute negotiations,' 'to carry on business,' 'to carry out,' or 'to carry on.'  'Any' means 'to any extent' or 'in any degree.'  'Business' means 'activity directed toward some end,' or 'a usually commercial or mercantile activity customarily engaged in as a means of livelihood,' or 'transactions, dealings, or intercourse of any nature.'"  *Diamond Crystal*, 593 F.3d at 1264 n.18 (citations omitted).  Thus, any transaction of business within the state will subject a nonresident to personal jurisdiction under the Long-Arm statute, subject of course to the limitations of due process.

Nichols, Wroten, and Elliott are residents of Florida.  Docs. 25 ¶¶ 10, 15, 21; 31-1 ¶ 2; 31-2 ¶ 2; 31-3 ¶ 2.  However, each of them has also stated that they transact business in Georgia each year.  Docs. 31-1 ¶ 8; 31-2 ¶ 8; 31-3 ¶ 8.  Although these yearly business dealings are in their corporate capacities as representatives of Crisp Melons, Summer Time, or Global, the Georgia Long-Arm statute still applies to them because the "fiduciary shield doctrine" has been rejected in Georgia.  *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266, 719 S.E.2d 489, 494 (2011); *Meyn Am, LLC, v. Tarheel Distrib., Inc.*, 36 F.Supp. 3d 1395, 1403 (M.D. Ga. 2014).  Accordingly, because the individual defendants have transacted business in Georgia, they are within the reach of Georgia's Long-Arm statute.

### 3. Due Process

For the Court to exercise jurisdiction over nonresident defendants, it is not enough that that the long-arm statute is satisfied. Personal jurisdiction must also satisfy the Due Process Clause of the Fourteenth Amendment. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "The heart of this protection is fair warning— the Due Process Clause requires 'that the defendant's conduct and connection with the forum State be such that he should reasonably anticipate being haled into court there.'" *Diamond Crystal,* 593 F.3d at 1267 (quoting *Burger King*, 471 U.S. at 474) (brackets omitted). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (*quoting Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks and brackets omitted)).

"[T]he fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum … and the litigation results from alleged injuries that arise out of or relate to those activities." *Diamond Crystal*, 593 F.3d at 1267 (internal quotation marks and citation omitted). "Put differently, the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Id*.

-13-

Here, OneSouth has alleged that the nonresident defendants created a Georgia corporation, Summer Time, to buy watermelons and improperly avoid lender security interests. Doc. 25 ¶¶ 58-59. The nonresidents have admitted that they are each managers of Summer Time. Docs. 31-1 ¶ 4; 31-2 ¶ 4; 31-3 ¶ 4. Moreover, OneSouth, a Georgia bank, has alleged that the buyer-defendants' scheme resulted in it potentially losing an otherwise superior security interest. Accordingly, OneSouth has properly alleged that the nonresident defendants availed themselves of the privileges of conducting activities in Georgia, and this lawsuit arises from those activities. Therefore, OneSouth has alleged that the Court's exercise of jurisdiction over the nonresident defendants will not upset traditional notions of fair play and substantial justice. The motion to dismiss for lack of personal jurisdiction is **DENIED** without prejudice. Any defendant may renew the motion if discovery reveals the absence of personal jurisdiction.

## IV. CONCLUSION

Because of the foregoing reasons, the buyer-defendants' motion to dismiss (Doc. 31) is **DENIED**.

**SO ORDERED**, this 28th day of May, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
